IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PEPPER REED<br>1424 W STREET, NW APT 202<br>WASHINGTON, D.C. 20009<br><br>Plaintiff,<br><br>v.<br><br>PEPCO HOLDINGS, INC.<br>701 9TH STREET, NW<br>WASHINGTON, D.C. 20068<br><br>Defendant. | CASE NO. 17-1357 |

**COMPLAINT**

Plaintiff Pepper Reed (hereinafter, "Plaintiff" or "Ms. Reed") brings this action against Defendant Pepco Holdings, Inc. (hereinafter, "Defendant" or "Pepco") to redress Defendant's violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, the District of Columbia Family and Medical Leave Act ("DCFMLA"), D.C. Code § 32-501 *et seq.* (collectively, "FMLA Acts"), and the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401 *et seq.*  The events giving rise to this Complaint stem from Pepco's treatment of an employee and single mother who was subjected to physical and emotional abuse from another Pepco employee and father of one of her children, Mr. Randall Allen.  Ms. Reed endured physical and emotional abuse from Mr. Allen over the span of years, both at home and at work. At Pepco's offices, Mr. Allen threw objects at Ms. Reed, touched her inappropriately, verbally abused her, shared explicit pictures of her in order to intimidate her, harassed her with continuous phone calls, and slashed her tires over seven times while her car was sitting in a nearby parking lot.  Ms. Reed reported the abuse to Pepco's Human Resources department on

multiple occasions and to multiple human resources representatives, one of whom was Mr. Allen's mother, Cassandra Allen. Pepco declined to discipline Mr. Allen, eventually permitting him to resign from his position in 2015.

When Ms. Reed was forced to take a leave of absence to manage the overwhelming stress that resulted from Mr. Allen's abuse, she made every effort to comply with Pepco's procedures for taking FMLA leave. She actively communicated with Pepco HR, her doctors, and with Cigna Corp. ("Cigna"), Pepco's contractor, in order to get Cigna the medical documentation that it requested from her by letter. And although Pepco believed that Cigna never received that documentation, Pepco did not communicate that fact to Ms. Reed until it decided to initiate termination procedures. Similarly, it wasn't until after Ms. Reed attempted to return to work that she received a letter from Cigna informing her that she would need to submit a Fitness for Duty Certification in order to do so. When Ms. Reed found out that the Fitness for Duty Certification was required, she had the form filled out at the earliest available appointment with her doctors and hand delivered the form to Pepco—only to be told by Pepco Human Resources that they could not accommodate a hard copy form.

Although Pepco permitted Mr. Allen, the perpetrator, to resign from his position, it summarily terminated Ms. Reed, the victim, when she took a leave of absence as a result of the abuse. Ms. Reed now seeks to recover lost wages, salary, employment benefits, and other compensation denied to her or lost because of Pepco's violations of the DCHRA and the FMLA Acts—namely, Pepco's wrongful termination of Ms. Reed at the conclusion of her FMLA and DCFMLA leave. Ms. Reed also seeks to recover pre- and post-judgment interest, liquidated damages, attorney's fees, costs, and such other relief as the Court may deem just and proper.

## PARTIES, JURISDICTION, AND VENUE

1. Ms. Reed is a current resident of the District of Columbia. In 2010, Ms. Reed began working for Pepco in a building located at 701 9th Street NW, Washington, D.C. 20001. Ms. Reed was employed by Pepco from 2010 until 2015.

2. Pepco is a corporation headquartered in, and with its principal place of business in the District of Columbia. Therefore, this Court has personal jurisdiction over Pepco. Pepco employs more than fifty employees.

3. Plaintiff brings this action under the FMLA, DCFMLA, and DCHRA.

4. This Court has jurisdiction over the claims alleged in this Complaint pursuant to 28 U.S.C. §§ 1331, 1367.

5. Venue is appropriate under 28 U.S.C. § 1391 because the events that gave rise to this Complaint occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Ms. Reed filed two timely charges of discrimination with the District of Columbia Office of Human Rights ("DCOHR") on March 24, 2016. Filing those charges tolled the statute of limitations under the DCFMLA and the DCHRA for filing in this Court a civil action arising from the same events. D.C. Code § 2-1403.16; D.C. Mun. Regs. tit. 4, § 1610.3. Ms. Reed is within the two-year statute of limitations for a federal FMLA claim. 29 C.F.R. § 825.400(b).

7. On June 1, 2017, the DCOHR confirmed that Ms. Reed withdrew the charges of discrimination from the DCOHR in accordance with D.C. Code § 2-1403.04; D.C. Mun. Regs. tit. 4, § 1610.4.

## FACTUAL ALLEGATIONS

### A. *Pepco failed to act when Ms. Reed was subjected to emotional and physical abuse by another Pepco employee.*

8.      Ms. Reed started working for Pepco as a temporary Revenue Analyst in October 2010 and became a permanent employee on January 1, 2012.  In 2013 she was promoted to Revenue Analyst-B.  While she was employed with Pepco, she was a member of the International Brotherhood of Electrical Workers ("IBEW") Local 1900 Union.

9.      Pepco contracts with Cigna to administer certain human resources functions, including short-term disability benefits and FMLA leave.

10.     During 2011, Ms. Reed dated Mr. Allen, an employee in Pepco's Customer Care Billing Department, Error Processing Section.  The two had a child together in November 2011.  Ms. Reed took FMLA leave for six weeks in connection with her pregnancy.  She returned to work at Pepco at the beginning of 2012.

11.     Ms. Reed and Mr. Allen's relationship soon became violent.  From 2012 through 2015, Mr. Allen subjected Ms. Reed to ongoing emotional and physical abuse.  Although Mr. Allen worked in a different department, his desk was in close proximity to Ms. Reed's from 2012-2014.  In the workplace, Mr. Allen's actions included touching Ms. Reed inappropriately, throwing objects at her, knocking objects out of her hand, verbally abusing her in front of coworkers, making sexually explicit comments about her to coworkers, publicly sharing a sexually explicit picture of her, and continuously calling her on her work phone in order to harass her.  Even when Ms. Reed received a promotion in 2014 that moved her desk away from Mr. Allen's, the harassment continued.

12.     Ms. Reed reported these instances of abuse to Pepco Human Resources, including to Mr. Allen's mother, Cassandra Allen, a Principal Human Resources Business Partner at Pepco.

Ms. Reed's father, a supervisor in Pepco's Credit and Bankruptcies Department, also reported these instances to Ms. Allen.

13. In addition, during this time period there were at least seven instances in which the tires on Ms. Reed's car were slashed in the Pepco parking lot outside of Pepco's offices. Each of these occurrences took place when she was in the middle of an argument with Mr. Allen. Although the lot was a public parking lot, it was predominantly used by Pepco employees, and Pepco maintained security guards and a surveillance system on the lot.

14. On one or more occasions during 2012 and 2013, Ms. Reed met with Donna Perry, a supervisor in Customer Care, and Karen Gentry-May, a Principal Human Resources Business Partner at Pepco, to inform them of the abuse she was undergoing at the hands of Mr. Allen. At one of these meetings, Ms. Perry acknowledged that Human Resources had received several complaints about Ms. Reed's safety. They also discussed the instances of Ms. Reed's tires being slashed, and suggested that Ms. Reed begin parking her car nearer to the building and in sight of a surveillance camera. Ms. Reed did so, and the tire slashing instances stopped.

15. Ms. Reed obtained two protective orders against Mr. Allen, one in 2013 and one in February 2015. Ms. Reed gave a copy of the orders to her supervisor on each occasion. Ms. Reed had also been engaged in custody proceedings against Mr. Allen since 2012, and those proceedings were ongoing at the time of the 2013 and 2015 protective orders.

16. Mr. Allen resigned from his position in 2015, shortly after Ms. Reed obtained the second protective order against him.

> **B. Ms. Reed took a leave of absence to address medical issues arising out of the aforementioned abuse, and worked diligently to respond to Cigna's requests for documentation during her absence.**

17. In July 2015, Ms. Reed experienced severe anxiety and distress as a result of Mr. Allen's ongoing abuse. On July 8, 2015, Ms. Reed called Cassandra White to report that she was going

to see her doctor and was unable to come to work. On July 10 and 16, 2015, she visited Shenikka Moore, a clinical social worker whom she had been seeing since March of 2014. Ms. Moore determined that Mr. Allen's abuse had caused Ms. Reed significant trauma and that a leave of absence from work was needed in order for Ms. Reed to recover. Ms. Moore also suggested that Ms. Reed continue to see her psychiatrist Dr. Syed Asif Ali, and Ms. Reed did so in July 2015.

18.     At Ms. Moore's suggestion, Ms. Reed submitted to Cigna an initial request for a leave of absence from July 7 through July 15, 2015 to address the medical concerns related to Mr. Allen's abuse.

19.     In a letter dated July 22, 2015 to Ms. Reed, Cigna stated that "[t]he medical information on file currently supports disability through July 15, 2015. In order to consider benefits beyond [that point], we have requested information from your Medical Provider. As previously communicated in our letter of July 16, 2015 additional medical information should be received by August 14, 2015 or we will make a decision on further benefits based on the information currently on file." The letter was signed by Cigna Disability Claim Manager "Andrew E."

20.     Ms. Moore had previously taken FMLA leave from November 2011 through the beginning of 2012, in connection with the birth of her daughter. During that time, Pepco never required her to personally submit medical documentation to support her FMLA leave of absence. In addition, when Ms. Reed took FMLA leave in 2011, she was not required to submit a Fitness for Duty Certification in order to return to work. At that time, Pepco used Unum Group as its third-party administrator for FMLA and short-term disability claims. Unum interacted directly with Ms. Reed's doctors; she had never been required to submit documentation to support her absences prior to this point.

6

21.     Also on July 22, 2015, Ms. Reed emailed Ms. Moore to inform her that Cigna had attempted to call her, and to request Ms. Moore's office contact number.  Ms. Moore responded to the email with her contact information.

22.     Plaintiff received a letter from Pepco Disability Management dated August 11, 2015. The letter stated: "As an employee represented by Local 1900, you are eligible for paid sick leave, as set forth in Article 13 of the Collective Bargaining Agreement between Local 1900 IBEW and the Company, provided you properly report your absence and submit medical documentation attesting to your inability to work."  The letter stated that "[i]t is very important that you continue to work with Cigna, [Pepco's] disability management partner, and ensure that Cigna receives all requested documents from your health care provider."  The letter was signed by Pepco Disability Management, and copied to Pepco's Human Resources Business Partners, Carolyn Foster (Ms. Reed's supervisor at Pepco), and Andrew E. Keicher (claims manager at Cigna).

23.     Upon information and belief, Ms. Moore received a request from Cigna for Ms. Reed's medical information in mid-August 2015.  By a letter dated August 13, 2015, Cigna stated that in order to review Ms. Reed's claims for short-term disability benefits, Ms. Moore should submit office visit notes from July 7 through August 13, 2015 as well as a behavioral health questionnaire.

24.     In a letter dated August 19, 2015 to Ms. Reed, Cigna stated that the period of leave from July 7 through July 15, 2015 had been approved for FMLA leave.  The letter also stated that Cigna had received her request to extend her leave of absence until August 23, 2015.  The letter stated that as of August 19, she had used 298 hours of her FMLA leave, and had 182 hours remaining.  Finally, the letter stated that Ms. Reed should ask her health care professional to send

her disability claims manager at Cigna "[the e]nclosed Medical Request Form," office notes, current treatment plan, as well as "[u]pdated restrictions and limitations" within fourteen days of the last day of leave that has been approved or the date of the letter, whichever was later.

25. In email correspondence with Ms. Moore that occurred on August 20, 2015, Ms. Reed explained that Cigna required her to submit office notes from her previous visits. Ms. Moore acknowledged that she had received the forms and would complete them. Ms. Reed also indicated during this correspondence that she was feeling overwhelmed, that she was extremely stressed, tired, and had what she described as "a meltdown" requiring her mother to care for her.

26. On August 24, 2015, Ms. Moore prepared Cigna's forms, which include signed office notes from Ms. Reed's office visits on July 10 and July 16, 2015. On information and belief, she provided this report to Cigna.

### C. *When Pepco eventually permitted Ms. Reed to return to work, she was terminated almost immediately as a result of her FMLA-protected absences.*

27. Ms. Reed attempted to return to work on September 1, 2015. However, upon arriving at the office she was informed that she could not resume working until she filed a Fitness for Duty Certification. This is the first time Ms. Reed was informed that a Fitness for Duty Certification was a prerequisite to returning to work. At no time that day did anyone from Pepco mention that Ms. Reed's medical documentation was missing, nor was Ms. Reed given an opportunity to turn it in.

28. In the days after she attempted to return to work, Ms. Reed received a letter from Cigna stating that Cigna had received her request for a leave of absence, and that she was eligible to extend her FMLA leave through August 28, 2015. The letter was dated August 27, 2015 and stated that as of August 27, 2015, she had used 346 hours of FMLA leave, and had 134 hours remaining. The letter went on to explain that, "[w]e may contact Dr. Shenikka Moore once your

8

leave begins to obtain medical information necessary to evaluate your Short Term Disability claim.  If we do not receive the requested information, our review may be delayed or we may make a decision based on the information in our file."

29. The letter showed as enclosures a sheet of frequently asked questions, DCFMLA and FMLA notice of rights, and a Fitness for Duty Certification.  The Frequently Asked Questions sheet stated that: "You will need to have your Health Care Provider complete the enclosed Fitness for Duty form in accordance with your company policy and present the completed form to your supervisor and/or Disability Management at least two days prior to your return to work."  The DCFMLA Notice of Rights enclosure also stated that "If the employer believes that . . . a certification returned by the employee does not provide the required information the employer must notify the employee, in writing, of the missing or deficient information within 5 days of receipt."

30. On September 4, 2015, Ms. Reed forwarded Ms. Moore an electronic copy of the Fitness for Duty Certification form stating that "[t]his is the form that's required for me to return back to work[, but t]he Psychiatrist is not able to book appointments with me until the end of September. And I really need to return back to work ASAP."  Ms. Moore informed Ms. Reed that she would be out of the country until the week of September 21, 2015 but that she had already mailed Ms. Reed's medical records to Cigna, and "[t]hey should have received it already or soon."

31. Ms. Reed saw Dr. Ali at his earliest available appointment date on September 28, 2015, during which time he completed the Fitness for Duty Certification.

32. Ms. Reed presented the completed Fitness for Duty Certification to Pepco on September 29, 2015.  At that time, Pepco initially sought to send Ms. Reed home because they could not accept a hard copy of the Fitness for Duty Certification.  They were able to rectify the problem,

however, by having Ms. Reed fax the completed from to Pepco's Human Resources office from the fax machine in Pepco's Human Resources office.  She worked from September 29 through October 9, 2015.

33.     When Ms. Reed saw Ms. Moore at an appointment in October, Ms. Reed personally observed Ms. Moore email to Cigna the same medical documentation that she forwarded in August.  Ms. Moore also sent the medical documentation to Jim Griffin, President of the IBEW Local 1900.

34.     On October 9, 2015 Ms. Reed was escorted from the Pepco building and was told that Cigna had never received the proper medical documentation to support her leave of absence.

35.     In a letter to Ms. Reed dated October 15, 2015, Pepco stated that a meeting had been scheduled for October 20, 2015 to discuss her continued employment.  The letter stated that Cigna had not received documentation from Ms. Reed's doctor to support her absence from July 16 through August 24, 2015: "Records from Cigna indicate that you were approved for leave starting July 7, 2015 through July 15, 2015.  Cigna made multiple attempts to collect documentation to support your continued absence from July 16, 2015 through August 24, 2015.  To date, you have not provided the requested documentation.  Further, you informed Cigna that you did not treat [sic] during the months of August or September.  You returned to work on September 29, 2015, but you have continued in your failure to provide the requested supporting documentation."

36.     Pepco stated that Ms. Reed's alleged failure to provide the proper documentation would result in the period from July 16 through September 28, 2015 being charged as unapproved absence from work, and that "discharge appears to be warranted."  The letter was signed by Cassandra White, Supervisor of Customer Care Billing at Pepco.

37.   On October 20, 2015, Ms. Reed attended a meeting at Pepco's offices with her union representative, supervisors, and members of Pepco's Human Resources Department.  The meeting focused on Pepco's belief that Ms. Reed had never submitted to Cigna the medical documentation supporting her leave of absence.  Ms. Reed also attended a subsequent union mediation meeting at Pepco's offices, represented by IBEW Local 1900 President Mr. Griffin.  Upon her arrival at the meeting, Ms. Reed discovered that around eight human resources representatives were in attendance, including Ms. Gentry-May and Ms. White.

38.   On October 22, 2015 Ms. Reed received a letter from Pepco stating that her employment with Pepco had been terminated effective October 21, 2015.  The letter stated only: "This termination is based on attendance and conduct related infractions."  It was signed by Robert A. Short, Manager of Billing Services at Pepco.

39.   Ms. Reed and her healthcare providers provided Cigna with all required documentation to be in compliance with FMLA and DCFMLA regulations.

40.   Ms. Reed has suffered severe harm because of her termination, including, but not limited to, emotional distress and financial harm.

41.   Ms. Reed submitted two charges of discrimination under the DCFMLA on March 24, 2016 to the DCOHR: one on the basis of DCFMLA-related retaliation, and the other alleging sexual harassment, failure to accommodate a disability, and retaliation by termination.  The charges of discrimination remained pending before the DCOHR until May 25, 2017, when Ms. Reed withdrew the charges.

## COUNT I: FMLA RETALIATION

42.   Plaintiff hereby incorporates by reference paragraphs 1 through 41, above.

43.   At all relevant times prior to her termination, Ms. Reed was an "eligible employee" within the meaning of the FMLA.  29 U.S.C. § 2611(2); 29 C.F.R. § 825.110.  Ms. Reed worked

for Defendant Pepco for at least twelve months and 1250 hours in the twelve-month period prior to the events giving rise to this Complaint. 29 U.S.C. § 2611(2); 29 C.F.R. § 825.110. Defendant Pepco was an "employer" within the meaning of the FMLA, as it was, and continues to be, engaging in commerce and employing more than fifty employees during the twenty calendar work weeks in the preceding calendar year. 29 U.S.C. § 2611(4).

44.  As an eligible employee, the FMLA entitled Ms. Reed to twelve work weeks of medical leave due to a serious health condition that made her unable to perform the functions of her job. 29 U.S.C. § 2612(a)(1)(D).

45.  The anxiety, depression, and stress that Ms. Reed experienced as a result of the abuse from her coworker Mr. Allen was a "serious health condition" within the meaning of the FMLA, triggering her entitlement to protected medical leave. 29 C.F.R. § 825.113.

46.  Each time Ms. Reed made a request for leave or to extend her leave, she received notification that she was eligible to take FMLA leave. Ms. Reed's doctors and health care professionals also supplied Pepco with the medical certification required by the FMLA. 29 U.S.C. § 2613; 29 C.F.R. § 825.305. At no point while Ms. Reed was on leave did Pepco dispute her eligibility nor did it provide Ms. Reed with notification of deficient information.

47.  Upon return to work, Ms. Reed provided the Fitness for Duty Certification required by FMLA regulations. 29 C.F.R. § 825.312.

48.  Upon her return to work, Ms. Reed was entitled to be restored to her prior position or a position equivalent to the one she held when her leave commenced. 29 U.S.C. § 2614(a)(1). Instead, Pepco terminated Ms. Reed, citing her absences.

49.  By terminating Ms. Reed's employment upon her return to work rather than restoring her to her prior position or an equivalent position, and without any legitimate business reason for

doing so, Defendant Pepco has engaged in retaliation in violation of the FMLA.  29 U.S.C. § 2615.

50. Ms. Reed suffered and continues to suffer significant harm as a result of Defendant's violation of the FMLA.

**COUNT II: DCFMLA RETALIATION**

51. Plaintiff hereby incorporates by reference paragraphs 1 through 41, above.

52. At all relevant times prior to her termination, Ms. Reed was an "eligible employee" within the meaning of the DCFMLA, D.C. Code § 32-501(1); D.C. Mun. Regs. tit. 4, § 1603.1. Ms. Reed worked for Defendant Pepco for at least one year and 1,000 hours in the twelve-month period leading up to the events giving rise to this Complaint.  Defendant Pepco is a "covered employer" under the DCFMLA, employing twenty or more persons in the District of Columbia on or after April 1, 1991, and maintaining twenty or more employees in the twenty calendar work weeks in the current or preceding calendar year.  D.C. Code § 32-501(2); D.C. Mun. Regs. tit. 4, § 1601.

53. As an eligible employee, the DCFMLA entitled Ms. Reed to sixteen work weeks of medical leave in any twenty-four month period due to a serious health condition that made her unable to perform the functions of her job.  29 U.S.C. § 2612(a)(1)(D); D.C. Mun. Regs. tit. 4, § 1604.

54. The anxiety, depression, and stress that Ms. Reed experienced as a result of the abuse from her coworker Mr. Allen was a "serious health condition" within the meaning of the DCFMLA, and that triggered her entitlement to take medical leave.  D.C. Code § 32-503; D.C. Mun. Regs. tit. 4, § 1605.

55. Each time Ms. Reed made a request for leave or to extend her leave, she received notification that she was eligible to take FMLA leave.  Ms. Reed's doctors and health care

professionals also supplied Pepco with the medical certification required by the DCFMLA.  D.C. Code § 32-504; D.C. Mun. Regs. tit. 4, § 1615.  At no point while Ms. Reed was on leave did Pepco dispute her eligibility nor did it provide Ms. Reed with notification of deficient information.

56.    Upon her return to work, Ms. Reed was entitled to be restored to her prior position or a position equivalent to the one she held when her leave commenced.  D.C. Code § 32-505(d).  Instead, Pepco terminated Ms. Reed, citing her absences.

57.    By terminating Ms. Reed's employment upon her return to work rather than restoring her to her prior position or an equivalent position, and without any legitimate business reason for doing so, Defendant Pepco has engaged in retaliation in violation of the DCFMLA.  D.C. Code § 32-507; D.C. Mun. Regs. tit. 4, § 1621.1.

58.    Ms. Reed suffered and continues to suffer significant harm as a result of Defendant's violation of the DCFMLA.

## COUNT III: FMLA INTERFERENCE

59.    Plaintiff hereby incorporates by reference paragraphs 1 through 41, above.

60.    At all relevant times prior to her termination, Ms. Reed was an "eligible employee" within the meaning of the FMLA, and Defendant Pepco was an "employer" within the meaning of the FMLA.  29 U.S.C. § 2611(2), -(4); 29 C.F.R. § 825.104, -.110.

61.    The anxiety, depression, and stress that Ms. Reed experienced as a result of the abuse from her coworker Mr. Allen was a "serious health condition" within the meaning of the FMLA, and that triggered her entitlement to take medical leave.  29 C.F.R. § 825.113.

62.    Once Ms. Reed notified her supervisor that she needed to take protected medical leave, the FMLA required Pepco to give Ms. Reed notice of whether she was eligible for FMLA leave within five business days of her request (referred to in the regulations as "eligibility notice").  29

C.F.R. § 825.300(b)(1).  Each time Ms. Reed made a request for leave or to extend her leave, she received notification that she was eligible to take FMLA leave.

63.    The FMLA also required Pepco to give notice of whether the requested leave had been designated as FMLA leave within five business days of the time it had enough information to make that determination (referred to in the regulations as "designation notice").  29 C.F.R. § 825.300(d).  Under the FMLA, if Pepco decided that the leave would not qualify as FMLA leave, it was required to notify Ms. Reed of that determination.  29 C.F.R. § 825.300(d)(1).  In addition, if Pepco did not have sufficient information about Ms. Reed's request for leave in order to decide whether it should be designated as FMLA leave, it was Pepco's responsibility to inform Ms. Reed of that fact and to ask for more information.  29 C.F.R. § 825.301(a).

64.    Cigna repeatedly told Ms. Reed that she was eligible to take FMLA leave.  At no point while Ms. Reed was on leave did Pepco dispute her eligibility nor did it provide Ms. Reed with notification of deficient information.

65.    When Ms. Reed returned to work, believing that she had taken FMLA-protected leave, Pepco terminated her employment, citing her absences.  By terminating Ms. Reed's employment without ever giving Ms. Reed notice that she was ineligible for FMLA leave, or that her leave would not be designated as FMLA leave, Pepco has engaged in interference in violation of the FMLA.  29 U.S.C. § 2615.

66.    Ms. Reed suffered and continues to suffer significant harm as a result of Defendant's violation of the FMLA.

### COUNT IV: DCFMLA INTERFERENCE

67.    Plaintiff hereby incorporates by reference paragraphs 1 through 41, above.

68.    At all relevant times prior to her termination, Ms. Reed was an "eligible employee" within the meaning of the DCFMLA, and Defendant Pepco was an "employer" within the

meaning of the DCFMLA.  D.C. Code § 32-501(1), -(2); D.C. Mun. Regs. tit. 4, §§ 1601, 1603.1.

69. The anxiety, depression, and stress that Ms. Reed experienced as a result of the abuse from her coworker Mr. Allen was a "serious health condition" within the meaning of the DCFMLA, and that triggered her entitlement to take medical leave.  D.C. Code § 32-503; D.C. Mun. Regs. tit. 4, § 1605.

70. Once Ms. Reed notified her supervisor that she needed to take protected medical leave, the DCFMLA required Pepco to give Ms. Reed notice of whether she was eligible for DCFMLA leave within five days of her request.  D.C. Mun. Regs. tit. 4, § 1613.4.  Each time Ms. Reed made a request for leave or to extend her leave, she received notification that she was eligible to take FMLA leave.

71. The DCFMLA also required Pepco to give notice to Ms. Reed of whether the requested leave had been designated as DCFMLA leave within five business days of receiving Ms. Reed's medical certification.  D.C. Mun. Regs. tit. 4, § 1613.6.  If Pepco believed that the medical certification Ms. Reed provided did not provide sufficient information, Pepco was required to notify Ms. Reed in writing of the missing or deficient information within five days of receipt of the medical certification.  D.C. Mun. Regs. tit. 4, §1615.5.

72. Pepco repeatedly informed Ms. Reed that she was eligible to take DCFMLA leave.  At no point while Ms. Reed was on leave did Pepco dispute her eligibility nor did it provide Ms. Reed with notification of deficient information.

73. When Ms. Reed returned to work, believing that she had taken DCFMLA-protected leave based on Pepco's prior statements, Pepco terminated her employment, citing her absences.  By terminating Ms. Reed's employment without ever giving Ms. Reed notice that she was ineligible

16

for DCFMLA leave, or that her leave would not be designated as DCFMLA leave, Pepco has engaged in interference in violation of the DCFMLA.  D.C. Code § 32-507; D.C. Mun. Regs. tit. 4, § 1621.1.

74. Ms. Reed suffered and continues to suffer significant harm as a result of Defendant's violation of the DCFMLA.

### COUNT V: DCHRA RETALIATION

75. Plaintiff hereby incorporates by reference paragraphs 1 through 41, above.

76. Ms. Reed was harassed and abused by Mr. Allen at Pepco's offices on an ongoing basis from 2012 to 2015.  This harassment was so pervasive as to create an abusive working environment and impact Ms. Reed's psychological health.  Such harassment was a violation of the DCHRA's prohibition against discrimination on the basis of sex.  D.C. Code § 2-1402.11; D.C. Mun. Regs. tit. 4, § 101.4.

77. Ms. Reed and others reported the abuse to members of Pepco's Human Resources Department on several different occasions, including to Ms. Perry, Ms. Gentry-May, and Ms. Allen.  Ms. Perry and Ms. Gentry-May acknowledged receiving complaints about Ms. Reed's safety.  In addition, Ms. Reed informed her direct supervisor both times she obtained a protective order against Mr. Allen.

78. The DCHRA prohibits an employer from retaliating against an employee in the exercise of any protected right, including the reporting of sexual harassment.  D.C. Code § 2-1402.61.

79. Although Mr. Allen was permitted to resign after Ms. Reed obtained the second protective order against him in February 2015, Ms. Reed was forced to take FMLA leave to deal with the ongoing emotional harm she suffered as a result of Mr. Allen's abuse.  When Ms. Reed attempted to return to work, Pepco terminated her.

80.     Pepco violated D.C. Code § 2-1402.61(a) by retaliating against Ms. Reed when she reported these instances of harassment.

81.     Ms. Reed suffered, and continues to suffer, significant harm as a result of Pepco's DCHRA violations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Pepper Reed respectfully requests that this Court enter judgment against the Defendant providing the following relief:

A. Liquidated damages in an amount equal to Ms. Reed's lost wages, salary, employment benefits, and other compensation pursuant to 29 U.S.C. § 2617(A);

B. An order requiring Defendant to correct its records to reflect that Ms. Reed should not have been terminated as a result of her absence;

C. Back wages, salary, employment benefits, and other compensation, including all pay increases she would have received but for her termination, plus pre- and post-judgment interest;

D. Compensatory damages for pain, suffering, humiliation, and emotional distress;

E. An order enjoining the Defendant from further acts of discrimination and interference;

F. An award of pre- and post-judgment interest, costs, and attorney's fees; and

G. Such other relief as this Court shall deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all counts set forth herein.

Respectfully submitted,

*/s/ Katharine Mapes*
Katharine Mapes (DC Bar No. 993784)
Anjali Patel (DC Bar No. 1000826)
SPIEGEL & MCDIARMID LLP
1875 Eye Street, NW
Suite 700
Washington, DC  20006
(202) 879-4000
katharine.mapes@spiegelmcd.com
anjali.patel@spiegelmcd.com


Dennis A. Corkery (DC Bar No. 1016991)
Matthew K. Handley (DC Bar No. 489946)
WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS
11 Dupont Circle, NW
Suite 400
Washington, DC  20036
(202) 319-1000
dennis_corkery@washlaw.org
matthew_handley@washlaw.org

*Attorneys for Plaintiff Pepper Reed*

July 11, 2017